Linda (White) SMITH, Appellant,

v.

Kirby WHITE, Respondent.

No. WD 59431.

Missouri Court of Appeals, Western District.

Feb. 19, 2002.

Thomas Summers, St. Joseph, for Appellant.

James Nadolski, St. Joseph, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Appellant Linda Smith appeals from the judgment of the trial court finding her in contempt and increasing her monthly child support obligations. We affirm in part and reverse in part.

### Factual Background

The fifteen-year marriage between appellant Linda Smith ("Mother") and respondent Kirby White ("Father") was dissolved on March 5, 1996. Custody of the parties' minor children (currently 18 and 19 years of age) was awarded jointly to both parties. At that time, Mother was given primary physical custody of the children.

In a later modification proceeding, physical custody of the children was transferred to Father. Mother was subsequently ordered to pay Father $1,157 per

month in child support beginning in January 1997. Father was ordered to provide medical insurance coverage for the children. The modification judgment, however, did not disturb the provision in the dissolution judgment that Mother pay seventy-five percent of all medical expenses of the children that were not covered by insurance.

The Mother's earnings decreased in the years following the modification judgment. Mother is a physical therapist, and her income decreased significantly due to the impact of federal legislation. Specifically, her profession was severely impacted by reductions in Medicare reimbursements. Her income has declined from $72,000 in 1996 to approximately $62,000 in 2000. She currently works between fifty and sixty hours per week, traveling between fifteen nursing homes across western Iowa providing physical therapy services. The nearest facility is an hour from her residence, with other facilities five hours away. Consequently, she is away from home two nights per week. To obtain a position more local, her income would be reduced to approximately $50,000. Despite her reduction in income, Mother has remained current on her child support obligations to Father. Since the dissolution, Mother has remarried, and she testified at trial that she pays her new husband's car payment and has paid her husband's child support obligations for his children.

As the parties' two children progressed through their teenage years, the parties agreed that the children would undergo orthodontic treatment to correct misalignments in their teeth. As a result of Father's company changing insurance carriers, this expense would not be covered by insurance. The parties still decided, however, to proceed with the children's treatment. Mother, however, failed or refused to sign the treatment agreement when it

was sent to her. Over the course of the children's treatment, a total bill of $6,285 has accumulated.

Mother made no payments towards the children's orthodontic expense. Mother alleges, as will be further discussed below, that the parties agreed to allocate $250 of her monthly child support payments towards this expense, in lieu of her seeking an administrative reduction in her child support because of her reduced income. Due to Mother's failure to contribute towards this expense, Father filed a contempt action against Mother on May 17, 2000. Father also claimed that Mother refused to make any payments until he paid his twenty-five percent portion of those expenses.

Father's contempt action was also joined with a motion to modify Mother's child support obligations under the prior modification judgment. Specifically, Father sought an increase in child support, as the elder child was to begin college in August 2000. Father alleged that the child's anticipated college expenses would be $12,000 per year. Mother claims that the actual expenses are closer to $5,054 per year. Mother filed a counter-motion to modify. She sought to decrease the amount of child support, as Father's income had increased while hers had substantially decreased.

After a hearing, the trial court entered a contempt judgment in favor of Father in the amount of $6,285, representing the full amount of the children's orthodontic expenses, finding that there was no agreement between the parties that $250 of her current child support obligation be used for her share of the orthodontic expenses, contrary to Mother's allegations. The trial court also recalculated Mother's child support using its own Form 14 calculations. As a result, the modification judgment increased Mother's child support obligation

to $1,438 per month. The present appeal follows.

## Discussion

■ The trial court's decision on a motion to modify must be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Shiflett v. Shiflett,* 954 S.W.2d 489, 492 (Mo.App.1997). The same standard of review is also applicable to contempt judgments. *Carrel v. Carrel,* 791 S.W.2d 831, 834 (Mo.App.1990).

Mother raises four points on appeal. For her first point on appeal, Mother contends that the trial court erred in increasing her child support obligation, as Father failed to sustain his burden of proof to show a substantial change of circumstances to necessitate an increase in child support (especially given the decrease in mother's income). Father responds that there was more than adequate evidence of a substantial and continuing change of circumstances, given the eldest child's entry into college.

The expenses associated with a child's entry into college can constitute a sufficiently substantial change in circumstances to support a modification proceeding. *Gordon v. Gordon,* 924 S.W.2d 529, 535 (Mo.App.1996). Under some circumstances such events might not constitute a change of circumstances. For example, if the motion to modify is filed and reaches disposition prior to the child's entry into college, the change has not yet occurred. *In re Marriage of Stephens,* 954 S.W.2d 672, 676–77 (Mo.App.1997). Here, although the motion to modify was filed before the eldest child entered college, the child had begun college during the pendency of the modification action, prior to the hearing.

■ Father established that he was faced with up to an additional $12,000 yearly expense associated with the eldest child's higher education. This extraordinary expense constituted a substantial and continuing change of circumstances. He, therefore, met his threshold burden in this modification action. Mother's first point on appeal is denied.

For her second point on appeal, Mother argues that the trial court erred in its Form 14 calculation. Specifically, Mother contends that the income and expense figures within that form were not supported by the evidence, and should have reflected Mother's monthly income as $4,167, Father's as $2,427, and the extraordinary monthly expenses as $421. Under her calculations, her child support obligation would be $1,017 per month. Father replies that the figures used by the trial court are supported by "clear, cogent, and convincing" evidence.

■ In reviewing the record on appeal, we must "view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *Adams v. Adams,* 51 S.W.3d 541, 546 (Mo.App.2001). Here, there was substantial evidence and testimony in the record to support the trial court's findings with regard to Father's income, Mother's income, and the eldest child's college expenses. Mother complains that Father's testimony as to $12,000 (or even $13,000) in college expenses should not be utilized because grants were available to reduce the cost. The court's calculation in Form 14, however, was based on an annual cost of $9,000 ($750 per month) reflecting consideration of the possible grants. The trial court's findings do not appear to be against the weight of the evidence. Mother's second point on appeal is denied.

In her third point on appeal, Mother claims that the trial court erred in finding her in contempt, as she had contributed approximately $4,000 towards the orthodontic expenses under her alleged agreement with Father. She argues that it would be inequitable for Father to retain the "excessive" child support paid by Mother without granting her a credit against the orthodontic expenses. Father replies that the court's finding that there was no agreement (that a portion of the Mother's child support would be allocated towards those expenses instead of her seeking a downward modification of her support) was supported by substantial evidence. As such, Father concludes, the evidence adduced showed that Mother had failed to make any payments on the children's orthodontic expenses.

The essence of Mother's argument is that the trial court improperly discounted her testimony that she had agreed with Father that a certain portion of her child support payments would be allocated towards those expenses in lieu of her seeking an administrative reduction in her child support amount. At the modification hearing, Father testified that there was no such agreement, and the trial court found that there was no agreement between the parties.

■ As stated above, we view the evidence presented in the light most favorable to the judgment below. We may reverse only if there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or it erroneously applies or declares the law. *Foster v. Foster,* 39 S.W.3d 523, 527 (Mo.App.2001). As this was a civil contempt proceeding, Father was required only to establish Mother's obligation to pay for those expenses and Mother's failure to do so to make a prima facie case. *Watkins v. Watkins,* 839 S.W.2d 745, 747 (Mo.

App.1992). Once that prima facie case was established, the burden then shifted to Mother to show that her noncompliance was not "an act of contumacy." *Id.*

■ Here, the issue presented is whether the finding of contempt, specifically Mother's failure to make any payments towards the orthodontic expenses, was against the weight of the evidence. A trial judge sitting without a jury is entitled to believe all, some, or none of the evidence presented by the parties. *Adams,* 51 S.W.3d at 546 (quoting *Gerecke v. Gerecke,* 954 S.W.2d 665, 667 (Mo.App.1997)). As such, the trial court could properly reject Mother's testimony regarding the alleged agreement for the payment of the children's orthodontic expenses. Mother admitted that she had made no other payments towards those expenses. We must defer to the trial court's credibility determinations on this issue. *Id.* Mother's third point on appeal is denied.

■ Mother's last point on appeal suggests that the trial court erred in granting Father judgment in the amount of $6,285 as a contempt sanction for the children's orthodontic expenses, as this was the full amount of those expenses. Mother argues that under the original decree, she was only responsible for 75 percent of those expenses. Thus, she contends, she should only be obligated to pay $4,713.75. Father responds that requiring Mother to pay the full orthodontic bill was an appropriate sanction for failing to make any payments on the children's orthodontic expenses for years.

Mother's brief cites no authority in support of this point on appeal. Father cites three cases, but only *In re Marriage of Hunt,* 933 S.W.2d 437 (Mo.App.1996) is directly relevant. In *Hunt,* the Southern District described the purpose of civil contempt proceedings as remedial as opposed

to purely punitive (as in the case of criminal contempt proceedings). The most typical form of sanction imposed in civil contempt proceedings is the per diem fine, where the contemnor is ordered to pay a given amount of money per day until such time as the contempt is purged. Some courts have also imposed the sanction of a flat fine, but there has been some disagreement in the reported cases as to whether such flat fines are appropriate in a civil contempt proceeding.

*Hunt* held that flat fines may be proper in certain circumstances. In so holding, the *Hunt* court specifically disagreed with *Redifer v. Redifer,* 650 S.W.2d 26 (Mo.App. 1983), which stated that " '[a]n outright fine is not appropriate for civil contempt. .... Only a per diem fine that expires when the contemnor complies with the court's order is proper.' " *Hunt,* 933 S.W.2d at 448 (quoting *Redifer,* 650 S.W.2d at 28). The *Hunt* court, however, held that the discretion to impose a flat fine is not without limitation. To be proper, a flat fine should be compensatory in nature, "related to the actual damage suffered by the injured party." *Id.* at 449. In *Wisdom v. Wisdom,* 689 S.W.2d 82, 87 (Mo. App.1985) we said:

> The civil contemnor retains the power to terminate any sanction, even imprisonment, by the act of compliance—an alternative not open to the criminal contemnor. Thus also, a money sanction in a civil contempt functions only to remedy the contempt and to coerce the contemnor to perform. For that reason, a peremptory fine *per se,* unrelated to the performance sought, functions only to punish and not to compel. A money sanction imposed to enforce a civil contempt adjudication, rather, is per diem, continues only as long as the disobedience continues and *properly bears some relation to damages occasioned by the default in performance.* (internal citations omitted) (italics added).

We do not read *Hunt* as a departure from these principles. Although it did not describe the compensatory relationship of the monetary award to the contemptuous default, *Hunt* clearly looked for and found such a relationship. 933 S.W.2d at 449.

We hold that the trial court erred in its judgment finding Mother liable for the entire orthodontic bill for the children. There was no evidence to support a finding of additional damages to Father from Mother's default in performance. The trial court could only properly award Father a judgment for more than $4,713.75 if that greater amount was somehow compensatory or related to the damages suffered by Father. While Father had paid more than his share of the orthodontic expenses, his total liability exposure was not increased by Mother's refusal to pay those expenses. The division of those expenses within the dissolution judgment only affected the parents' responsibilities to each other regarding the bill, not their obligation to the orthodontist. The evidence presented by Father reveals no additional expenses or liabilities due to Mother's recalcitrance beyond his attorney's fees in prosecuting the contempt action. Father introduced testimony that those fees were in the amount of $850. The trial court made no finding about this request. Moreover, this is not enough to account for the full difference between the amount awarded by the trial court and the amount of the orthodontic expenses allocable to Mother under the original dissolution judgment.

We remand, to allow the trial court to reconsider the monetary sanction and to formulate that element of the judgment in a manner consistent with the principles of civil contempt. *Wisdom,* 689 S.W.2d at 87. In all other respects the judgment is affirmed.

ROBERT G. ULRICH, Judge, and LISA WHITE HARDWICK, Judge, concur.