**Dorothy C. KULAGA (Ebrite), Appellant Pro Se,**

v.

**Kenneth J. KULAGA, Respondent.**

**No. WD 61569.**

Missouri Court of Appeals, Western District.

Nov. 23, 2004.

Dorothy C. Kulaga (Ebrite), Stillwell, KS, pro se.

Christie E. Sherman, Liberty, MO, for respondent.

Before BRECKENRIDGE, P.J., SMITH and HOWARD, JJ.

PATRICIA BRECKENRIDGE, Judge.

Dorothy C. Kulaga, now Ebrite, appeals the trial court's judgment finding her in contempt for interfering with the court-ordered visitation rights of her former husband, Kenneth J. Kulaga (Father). Ms. Kulaga (Mother) alleges error in the court's awarding Father compensatory visitation, abatement of child support, attorney's fees, and litigation expenses. Because this court concludes that discussion of her allegations of error concerning the compensatory visitation, abatement of child support, and attorney's fees awards would have no precedential value, we affirm those awards by summary order pursuant to Rule 84.16(b). A memorandum of the reasons for our decision as to those awards has been provided to the parties. In this opinion, this court will address only Mother's claim that the trial court erred in ordering her to pay $2500 in litigation expenses to Father.

This court finds that the record supports an award of only $566 in expenses to Father. Therefore, the award of $2500 in expenses is reversed. Pursuant to Rule 84.14, this court enters an award of $566 in expenses to Father.

### Factual and Procedural Background

The parties were married on January 23, 1993. There were two children born of the marriage: Emily Claire Kulaga and Katelyn Grace Kulaga, twins, who were born on February 8, 1994. The parties' marriage was dissolved in the Circuit Court of Jackson County on November 10, 1997. At the time of dissolution, Father was living in Florida.

In its judgment of dissolution, the trial court awarded Mother sole legal and physical custody of the children and ordered Father to pay child support of $900 per month. Father was awarded specific visitation with the children of alternate weekends and alternate holidays, and one week of uninterrupted visitation a year, until the children reached the age of six. When the children reached the age of six, the trial

court ordered that Father was to receive two weeks of uninterrupted visitation a year. The judgment also authorized Mother to relocate, with the children, to Kansas, provided that she remain within the greater Kansas City metropolitan area. Accordingly, Mother relocated to Johnson County, Kansas.

On April 3, 2001, Father, who was then living in Tennessee, filed a motion to modify custody and a motion for contempt alleging, *inter alia*, that Mother had intentionally interfered with his court-ordered visitation rights. Father sought joint legal and physical custody of the children, with himself named primary physical custodian[1] or, in the alternative, added visitation, and he requested his attorney's fees and costs. On June 19, 2001, Father filed an amended motion for contempt more fully detailing the specific acts constituting contempt of the trial court's visitation orders. That same day, Father also filed a motion for change of custody and request for child support. In this motion, Father sought temporary and permanent legal and physical custody of the children, with visitation rights to Mother, and child support from Mother.

The court subsequently entered an order commanding Mother to appear in court on August 9, 2001, and show cause as to why she should not be held in contempt of court and why judgment should not be entered against her per Father's contempt motion.[2] Mother filed an answer to Father's contempt motion and a counter-motion for an order directing Father to show cause why he failed to abide by the requirement in the dissolution judgment that he provide his verifiable address, place of employment, health insurance coverage for the children, and child support. Mother also filed a motion to dismiss Father's motion for change of custody and request for child support due to lack of subject matter jurisdiction.

On September 19, 2001, the trial court held a pre-trial conference and entered a temporary order as to custody and visitation. The court also scheduled both parties' motions to be heard on January 23–24, 2002.

Father and his witnesses traveled from Nashville to Kansas City to attend the January 23–24, 2002 hearing, but Mother failed to appear. On February 2, 2002, Father filed a motion seeking sanctions for Mother's failure to appear for trial on his motions, payment of the attorney's fees he incurred in connection with the aborted hearing, and the expenses that he and two other potential witnesses incurred to attend the scheduled trial in Kansas City.

Father then filed a motion to abate his child support obligation under section 452.340.7, RSMo 2000,[3] because of Mother's interference with his court-ordered visitation rights. The court held a hearing on all pending motions on March 8 and 12, 2002.

On April 9, 2002, the trial court entered its "Judgment Entry Order of Contempt," finding Mother in contempt of the court's judgment of dissolution because of her in-

---

1. In *Aurich v. Aurich,* this court noted that section 452.375.1(1), RSMo 2000, does not provide for "primary physical custody" or a "primary physical custodian." 110 S.W.3d 907, 912 (Mo.App.2003) (citing *Loumiet v. Loumiet,* 103 S.W.3d 332, 338 (Mo.App. 2003)). This court will assume that Father's request for joint physical custody with himself receiving "primary physical custody" was a request that he receive more parenting time than Mother. *See id.*

2. The legal file provided by Mother does not contain a docket sheet and does not indicate whether a show cause hearing was held.

3. All statutory references are to the Revised Statutes of Missouri 2000.

terference with Father's court-ordered visitation. The court ordered, under section 452.340.7, the abatement of Father's child support obligation for the periods of May 1, 2002, through August 31, 2002, and June 1, 2003, through August 31, 2003, and awarded Father compensatory visitation, under section 452.400.6(1),[4] for the periods of June 1, 2002, through August 31, 2002, and June 1, 2003, through August 31, 2003. The trial court also awarded Father $15,000 in attorney's fees and $2500 in litigation expenses. The court specifically acknowledged that it lacked jurisdiction over the children and, therefore, could not modify the custody and visitation orders in the dissolution judgment. Additionally, the trial court found that Mother's motion to suspend Father's visitation was filed in retaliation for Father's motion for contempt and was, therefore, frivolous. This appeal followed.

Appellate review in a contempt action is the same as in any other judge-tried case, which is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Smith v. White*, 67 S.W.3d 742, 745 (Mo.App.2002). This court will affirm the judgment of the trial court, unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

Mother argues that the trial court's award of $2500 in litigation expenses was not supported by sufficient evidence. On this issue, Father testified concerning the amount of expenses he and his witnesses incurred to appear for the January 23, 2002, trial date for which Mother did not appear.[5] In particular, he testified:

Q. How much did you spend on transportation and your hotel to come here for that trial date?

A. I think the breakdown that we have is somewhere in the neighborhood of $7500.

Q. For all your witnesses?

A. Correct. And their lost time.

The Court: Right now, only hotel and air fare.

A. We have a document somewhere here that has that breakdown.

Q. That's correct. First of all, you did file a pleading, correct? You did file a pleading, correct?

A. Yes.

Q. And in your pleading you had broken it out through travel, hotel, including there was air fare, car rental. And I think you had a total of your personal travel of $566?

A. Uh-huh.

■ Mother objected to this testimony on the basis that it was not the best evidence. Father's counsel responded to the objection by stating, "I can introduce this into evidence." The "this" is never identified on the record.[6] Father's counsel did not offer any exhibit at that point. During

---

4. The judgment incorrectly cited section 452.400(3).

5. Mother does not raise on appeal and, therefore, this court does not address, whether a party's expenses incurred traveling to and from a hearing for which the other party failed to appear can be properly awarded as "litigation" expenses.

6. Attached to Father's motion for sanctions for Mother's failure to appear for trial on January 23, 2002, was "Exhibit A," which was titled:

**Travel expenses          Kulaga**
**Week of 1/20 through 1/25**
That exhibit reflected various expenses for Father and witnesses for mileage, hotels, air fare, food, lost work time, car rental, and phones, totaling $7902.83. Exhibits attached to motions filed with the trial court are not evidence and are not self-proving. *AJM Packaging Corp. v. Crossland Constr. Co.*, 962 S.W.2d 906, 910 n. 6 (Mo.App.1998).

discussion about the objection, the trial court stated that it would let the evidence in, but it wanted to get the "main hearing done today." Father's counsel then indicated that she would move on, but that the matter would be brought up at a recess. No additional evidence was presented on the issue of expenses.

■ The only evidence to support an award of expenses was Father's testimony, and his testimony was limited to expenses resulting from Mother's failure to appear for trial on January 23, 2002. The $7500 figure to which Father testified included both his and his witnesses' expenses. The only evidence of expenses Father specifically incurred of the $7500 in total expenses was his testimony that he incurred $566 for his personal travel. There was no evidence, and no way for the trial court to reasonably infer, that any of the remaining expenses were incurred by Father and for what purpose. The lack of any evidence, other than Father's testimony as to $566 in personal travel expenses, to demonstrate the nature and extent of the expenses Father incurred renders the trial court's award of $2500 in expenses unsupported by sufficient evidence. The evidence supports an award of only $566 in expenses to Father. Therefore, the expenses award must be reversed.

Rule 84.14 authorizes this court, in the event of a reversal, to "give such judgment as the court ought to give." This court awards Father $566 in expenses. The trial court's judgment is affirmed in all other respects.

All concur.