STATE ex rel. AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, Relator,

v.

The Honorable Thomas C. CLARK, Respondent.

No. WD 68255.

Missouri Court of Appeals, Western District.

Jan. 22, 2008.

David Frye, Overland Park, KS, for Appellant.

Peter Mouras, Jr., Fairway, KS, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

American Standard asks us to issue a writ prohibiting The Honorable Thomas C. Clark, circuit judge for the Sixteenth Judicial Circuit, from enforcing an order in a pending civil lawsuit, *Marianna Omazic v. Mark E. Ferrin and American Standard Insurance Company of Wisconsin*, Case No. 04CV212778. In that case, the circuit court ordered American Standard to disclose documents regarding all claims filed by its insureds since 2000. We issued a preliminary writ of prohibition on May 11, 2007. We make the writ absolute.

During June 2005, Marianna Omazic filed her fourth amended petition against American Standard in which she asserted that it breached its insurance contract with her by vexatiously refusing to pay her claim. Her claim arose out of a February 2004 automobile collision in which the driver of the other car was not insured, so Omazic sought recovery under her insurance policy's coverage for damage caused by an uninsured motorist.

In seeking discovery from American Standard, Omazic sent the firm a subpoena *duces tecum* seeking production of documents regarding all claims filed with American Standard since 2000. American Standard filed almost 1200 objections to the request. On February 22, 2007, the circuit court granted Omazic's motion to compel production of the requested information. When American Standard filed a motion for reconsideration, the circuit court convened hearings on March 30, 2007, and on April 4, 2007. At the conclusion of the hearings, the circuit court indicated that it was willing to limit Omazic's discovery request to claims made during 2000 to 2004 and to the Kansas City metropolitan area and would appoint a discovery master to assist the parties with discovery disputes. The circuit court determined that American Standard should bear the cost for the master. American Standard responded that Omazic should share in the cost. Apparently convinced that American Standard had been uncooperative in discovery, especially in light of its seeming zeal in raising objections, the circuit court rescinded its decision to limit Omazic's discovery request and declared that it would enforce Omazic's original request. On April 4, 2007, the circuit court entered an order denying American Standard's motion for reconsideration.

Although it claims to raise two points on appeal, American Standard actually raises only one: that we should issue a writ prohibiting the circuit court from enforcing its order because Omazic's discovery requests were overly broad and burdensome. American Standard asserts that the circuit court abused its discretion by not putting temporal, geographic, or subject matter limits on the requests. As further relief, American Standard asks us to order the circuit court (1) to conduct an *in camera* review to determine which privileged materials should be produced, (2) enter a protective order covering confidential and privileged information, and (3) to address each of its individual discovery objections. In the alternative, American Standard asserts that this court should order the circuit court to appoint a special master to assist it in resolving the parties' discovery disputes.

■ As a preliminary matter, we address Omazic's argument, raised in defense of the circuit court, that American Standard did not preserve its claim for appellate review. Omazic concedes that American Standard filed nearly 1200 objections to Omazic's discovery requests, but she claims that they were not specific

enough to preserve its objections under Rule 58.01(c)(3). The rule says, "If information is withheld because of an objection, then each reason for the objection shall be stated." For example, Omazic points out that in addressing Request No. 29, American Standard said:

> Defendant objects ... because it is overly broad and burdensome and that it is unlimited in scope and subject matter. Defendant also objects to Request No. 29 because it seeks proprietary, confidential and privileged information which is not reasonably calculated to lead to discovery of admissible evidence in this case. Therefore, plaintiff's request is harassing and intrusive.

American Standard raised similarly worded objections to the remainder of Omazic's requests.

■■■ American Standard, however, is seeking a writ of prohibition and is not directly appealing a judgment entered against it. A writ of prohibition is a discretionary remedy, and we "may accept limitations on the issues or examine new points not offered ab initio." *State ex rel. Carver v. Whipple*, 608 S.W.2d 410, 412 (Mo. banc 1980). We are not restricted only to issues that the appellant properly raised or preserved in circuit court. Moreover, even if American Standard were obligated to lodge a specific objection to preserve this issue, its objection was specific enough in this context. The general purpose of an objection is to notify the circuit court and opposing party of the party's allegation of error. *Khan v. Gutsgell*, 55 S.W.3d 440, 442 (Mo.App.2001). As evidenced by the record of the hearings on March 30 and April 4, the circuit court and Omazic understood that American Standard's objection was based on the lack of temporal, geographic, or subject matter parameters.

■■■ The discovery process' purpose is to give parties access to relevant, non-privileged information while reducing expense and burden as much as is feasible. State ex rel. *Ford Motor Company v. Messina*, 71 S.W.3d 602, 606 (Mo. banc 2002). The circuit court must ascertain that the process does not favor one party over another by giving it a tactical advantage: " 'The discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants.' " *Id.* (citation omitted). A circuit court has broad discretion in controlling and managing discovery, and we should interfere with its exercise of discretion only when we deem it to have abused its discretion to the point that a decision works an intolerable injustice. *Id.* at 607. A writ of prohibition is the proper remedy when the circuit court abuses its discretion, and the party seeking the writ shoulders the burden of proving that the circuit court has abused its discretion. *Id.*

■■■ Omazic sent American Standard a notice of deposition and subpoena *duces tecum* requiring production of documents in 78 categories, many of which had numerous subcategories. For example, Omazic requested documents regarding all claims filed with American Standard since 2000:

> 11. Copies of the following documents relating to automobile bodily injury claims from 2000 to present: a. All claim representative field manuals. b. All branch claim office procedure manuals. c. All claims investigation manuals. d. All interim procedures manuals. e. All quality assurance manuals. f. All policy assurance manuals. g. All regional underwriting. h. All personal line manuals. i. All policy service document records. j. If not

provided above, all documents, policy, and procedure manuals, or claims manuals concerning claims investigations procedure setting reserves, adjustments to reserves, and claim resolution for automobile bodily injury claims from 2000 to present.

. . . .

19. Copies of all documents regarding the following claims from 2000 to present: a. Minor impact/soft tissue (M.I.S.T.) claims. b. Uninsured motorist claims.

20. Copies of all documents granting, ordering or giving permission to claims adjustors authority to exceed settlement authority evaluations produced through the computerized evaluation systems, such as "Colossus" or its equivalent, used on the following from 2000 to present. a. Uninsured motorist claims. b. Minor impact/soft tissue (M.I.S.T.) claims. c. Any type injury claim.

. . . .

28. Copies of all documents regarding handling, in any manner, the following claims from 2000 to present: a. Uninsured motorist claims. b. Minor impact/soft tissue (M.I.S.T.) claims.

. . . .

42. Copies of all documents relating in any manner to the authority, including settlement authority, granted to employees handing the following from 2000 to present: a. Uninsured motorist claims. b. Minor impact/soft tissue (M.I.S.T.) claims.

The discovery requests also sought all information that American Standard had regarding its medical review system:

14. Copies of all documents regarding the following systems from 2000 to present: a. Medical Bill Review System . . . . b. Any medical bill review system.

15. Copies of all documents regarding the following systems used or relied upon to evaluate plaintiff's medical bills, plaintiff's injuries and the value of plaintiff's injuries in this claim: a. Medical Bill Review System . . . . b. Any medical bill review system.

Omazic further requested all documents since 2000 that positively or negatively reviewed any employee for handling claims:

38. Copies of all documents disciplining or negatively reviewing any employee for the following actions from 2000 to present: a. In handling uninsured motorist claims. b. In handing minor impact/soft tissue (M.I.S.T.) claims from 2000 to present. c. In use of the computerized evaluation system, such as "Colossus" or its equivalent from 2000 to present.

39. Copies of all documents rewarding, congratulating or recognizing any employee for the following actions from 2000 to present: a. In handling uninsured motorist claims. b. In handing minor impact/soft tissue (M.I.S.T.) claims. c. In use of the computerized evaluation system, such as "Colossus" or its equivalent from 2000 to present.

In response to Omazic's motion to compel, the circuit court chastised American Standard for obstructing discovery:

Upon examination, the Court respectfully finds that Defendant has repeatedly and consistently obstructed Plaintiff's discovery efforts by objection, refusal to produce discoverable items and repeated accusations. Therefore, the Court **SUSTAINS** Plaintiff's motion, admonishes Defendant to produce and respond to the requested discovery within fifteen days and to comply with the corporate deposition request on or before March 15, 2007, at a Missouri location. Failure to do so risks imposition of sanctions

including but not limited to striking Defendant's pleadings, entering judgment in favor of Plaintiff, awarding reasonable attorney fees to Plaintiff's Counsel, and other appropriate remedial action.

We agree with American Standard that ordering it to comply with Omazic's discovery requests without setting temporal, geographic, or subject matter limits was an abuse of discretion. The law is well settled that discovery requests that do not have reasonable temporal, geographic, or subject matter limitations constitute an abuse of the discovery process. *State ex rel. General Motors Acceptance Corporation v. Standridge*, 181 S.W.3d 76, 78 (Mo. banc 2006); *State ex rel. Ford Motor Company v. Nixon*, 160 S.W.3d 379, 380 (Mo. banc 2005).

Omazic's request was extremely broad in its scope. It essentially requested every document that American Standard had for every claim filed against it since 2000. Her request undoubtedly would require American Standard to produce hundreds of thousands—if not millions—of documents, many of which would be tangential to the lawsuit, if related at all. Her request was, therefore, overly broad. Indeed, at the March 30 hearing, the circuit court seemed to recognize that this was the case when it declared that it planned to limit some of Omazic's request to the years 2000 to 2004 and to the Kansas City metropolitan area.

In defending the circuit court, Omazic justifies the final order by pointing to American Standard's conduct. She asserts that the circuit court's discovery order should be upheld as a sanction for American Standard's bad faith during discovery. She also complains that American Standard's conduct invited whatever error the circuit court made. Omazic concedes that the circuit court did not base its original order on these grounds but argues that we should uphold the order on any grounds supported by the record. We agree that we must uphold the order on any grounds supported by the record, *State ex rel. Hayter v. Griffin*, 785 S.W.2d 590, 595 (Mo. App.1990), but we do not believe that these positions support the order.

As part of its broad discretion in controlling discovery, the circuit court has choices of remedies set out in Rule 61.01(d).[1] We grant that American Standard's conduct seemed to be vexing and was intended to obstruct, but the circuit court did not use the sanctions set out in Rule 61.01 to remedy the situation. If the circuit court intended for its final order to be a sanction, instead of remedying the situation, it seems that it would succeed only in making the entire discovery process unmanageable.

■ The same is true of the "invited error" argument. Omazic claims that American Standard invited the error of which it complains by requesting a limitation on her discovery requests and then turning down the circuit court's proposed solution. "Invited error" is "[a]n error that a party cannot complain of on appeal

---

1. These remedies are "(1) [a]n order refusing *to allow the disobedient party to support or* oppose designated claims or defenses or prohibit the disobedient party from introducing designated matters in evidence[;] (2)[a]n order striking pleadings or parts thereof or staying further proceedings until the order is obeyed or dismissing the action or proceeding or any part thereof or, *rendering a judgment by default against the disobedient party[;]*

(3)[a]n order treating as a contempt of court the failure to obey[;] (4)[a]n order requiring the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Rule 61.01(d).

**532**

because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling." BLACK'S LAW DICTIONARY 563 (7th ed.1999).

The record indicates that the circuit court agreed to appoint a discovery master at American Standard's cost. American Standard responded by asking that Omazic be required to pay some of the cost. This request appears to have been the straw that broke the camel's back, causing the circuit court to back away from providing relief from Omazic's broad discovery request and to return to its original decision of not limiting the request at all. American Standard's conduct was not inviting error. It, instead, was trying to negotiate "a better deal" for itself.

■ Finally, the parties make numerous arguments regarding whether or not Omazic is entitled to specific documents. For example, American Standard claims that an attorney-client privilege and the work product doctrine protect certain documents. Omazic asserts that American Standard waived its objection to these requests. The extent to which a lesser discovery order would have been justified is a matter for the circuit court in the first instance, and we do not want to interfere with the circuit court's exercise of discretion without a clear showing of abuse. *State ex rel. Pooker v. Kramer,* 216 S.W.3d 670, 672 (Mo. banc 2007). Hence, we decline consideration of these matters.

We, therefore, make absolute our writ to prohibit the circuit court from enforcing its order of February 22, 2007, in this case. We order the circuit court to set proper temporal, geographic, and subject matter limits on Omazic's discovery request. We leave to the circuit court's discretion whether or not a master should be appointed to assist it with the parties' discovery dispute and how to allocate the cost. We further leave to the circuit court's discretion rulings on American Standard's specific objections.

JOSEPH M. ELLIS, Judge, and LISA WHITE HARDWICK, Judge, concur.